My name is Peter Sessions. I represent the plaintiff and the appellate in this case, Joel Salz. I'd like to reserve two minutes for rebuttal, if I may. This case is an employee benefits case under ERISA, as the court knows, and it involves two interconnected issues. The first issue is the one that always arises in cases like this, which is did the insurer abuse its discretion in denying the claimant's claim for benefits? But overlaying this issue is a second issue, which is just as important and is peculiar to this case, which is did the district court comply with this court's memorandum of disposition from 2010? And I think that second issue is where I would like to start, because I think it's impossible to evaluate whether the district court made the correct decision below and also evaluate whether Standard Insurance Company made the correct benefit determination without looking at it through the lens of this court's prior decision. Now, if the court looks at its prior memorandum of disposition, it did two things, and the first thing it did was find that the district court did not apply the correct standard of review, and what this court said was that the district court did not have the benefit of the case Montour v. Hartford, and as a result, this court decided to remand it so that the district court would have the benefit of that ruling and making further determinations. And this court could have stopped there and simply said, please use the correct standard of review and try again. However, this court did not stop there and ---- Let me stop you on the first part before you get to the second. Did the disposition say that the right standard of review had not been used, that is, you had to use a different standard of review, or did it say that the review should be conducted within the framework where consideration is given to the arguable conflict of interest on the part of the insurance carrier? I don't know that the standard of review changed, but an additional factor was added as part of what's to be weighed. And I say that in the context, the Court was very clear in saying we're not in de novo review. If the contract provides for discretion on the part of the administrator, then it's an abuse of discretion standard. That standard doesn't change. You weigh within the Court's evaluation the possibility of a conflict affecting the decision, and creating a decision that was an abuse of discretion. But as I understand it, the standard of review has not changed, and our previous disposition did not tell the district court to use a different standard of review. That's correct. And I hope I'm not misleading the Court. What happened was ---- So we still have a discretionary standard of review. You just have to take into account the conflicting interest. That's correct. And there's no dispute on that point. It's clear that the correct standard of review to be employed in this case is the abuse of discretion standard of review. And what this Court said in its memorandum disposition was not that a different standard of review needed to be employed, but that the district court had not used the right test for the abuse of discretion standard of review. And hopefully that answers Your Honor's question on that point. But as I said earlier, the Court continued in its memorandum disposition, which indicates to our mind that it was ---- the Court was sufficiently troubled by the remainder of the district court's first opinion that there were other items that it felt needed to be corrected. And ---- Did it say correct or factors to consider? Well, that's the point, isn't it? That's the big question. It is the point. It didn't give a bottom line. It said don't forget these things, but left it to the district court to decide how these things fit within the framework. That's supposed to be applied. That's correct. And I think the way to look at the Court's prior opinion is to closely examine how it phrased its instructions. And what the disposition says is we note a number of non-exhaustive facts and circumstances the Court should consider on remand. And I think those words, facts and circumstances, are important. You know, this is not an opinion where the Court is making suggestions or has advice. The Court has termed these facts and circumstances. So as I read this opinion, these are set in stone. These are things that the Ninth Circuit has found that the district court does not have the liberty to disagree with on remand. Well, that really doesn't seem to flow from facts and circumstances the short court should consider. It says consider. It doesn't say follow our lead or take these as something set in stone, to my reading. Well, I think the Court would not have and I guess we're all engaging in a little mind reading here. But I don't think that the Court would have used the terms facts and circumstances if they were. We could have said we reached the following conclusions, which the Court has admonished to follow. To my mind, that sounds very similar to what this order says. Follow? Consider? Same thing? Well, regardless of whether it's follow or consider, this memorandum of disposition makes it clear that the Court is saying these are things that are true. Well, let's take the first one, for example, the Social Security. Sure. Now, that fact isn't going to change. The Court presumably could have said, well, based on the record we're examining, and it's not going to change because it's the administrative record, the Social Security Administration's decision wasn't accounted for. So claimant has to win. The Court didn't say that. The Court said, take into account what Montour said about what happens with Social Security disability benefits. Okay. District Court didn't fail to recognize that. District Court did discuss that. It may not have reached the conclusion that you think our panel's decision suggested, but our panel's decision said consider, not follow. And it seems to me that's an example of how consider and follow don't necessarily mean the same thing. I understand. And I think the Social Security issue is the one issue in this memorandum of disposition where there is some leeway, where the District Court may have had the authority to say, yes, it's true that Standard Insurance Company did not consider the Social Security. Well, second or third, if they were definitive, the Court could have said the same thing, could have entered judgment, could have directed the District Court to direct that benefits be paid because the record's not going to change. The Court remanded for the District Court to revisit the issues. Now, granted, I'm going to be the last to denigrate the authority of this Court to issue directions or to suggest the District Court should ignore what come back, but this says consider. The District Court considered. You may quarrel with the consideration, but how did the District Court fall short? I understand. And let me follow up on what I was saying earlier in answering that question, which is I think it's possible, and certainly the District Court did this, which was to say Standard did not properly consider the Social Security Award, but I assign it X amount of weight, and I don't find that that weight is enough to overturn the decision. We disagree with how much weight the Social Security Award should have had, and that's obviously in our briefs. But the other instructions that this Court gave in memorandum disposition do not give the District Court that same kind of leeway, because what the Court found in the memorandum disposition was that Standard failed to take into account Mr. Salza's own occupation and that it unreasonably relied on the Dictionary of Occupational Titles, and there are several other items in there as well. And the reason why these are important and don't give the District Court the same kind of leeway is because the Court used the word unreasonable. It said that Standard unreasonably relied on the Dictionary of Occupational Titles and that it did not reason in a deliberative fashion what Mr. Salza actually did before it determined what the material duties of his occupation were. And the reason I highlight these is because the Supreme Court in Concrete v. Frommert and this Court in Saloma v. Honda LTD Plan have both held that the touchstone in ERISA benefit denial cases is reasonableness. And what these cases say is we are evaluating under the abusive discretion standard whether they have made the right decision, and in making that determination with regard to whether it was an abusive discretion, we're basing it on reasonableness. So under these authorities, you know, it's our position that the Court's prior decision should have controlled the outcome of this appeal because the Court has already found facts and circumstances showing that Standard acted unreasonably. So, you know, obviously this Court ---- You think it should have ended after the last decision? I'm sorry? You think it was over after the last decision by this Court? To be quite honest, yes. But that's not what the bottom line of that decision was. That's true. And I think the reason for that can be found in the first part of the memorandum disposition. You know, as I mentioned earlier, the memorandum disposition has two parts. And the first part is the Ninth Circuit felt that the district court did not properly employ the correct standards. Is there any reason to talk about that if your understanding of the second half is what it was? I mean, if the second half amounts to determination standards view wasn't reasonable, it must have been an abuse of discretion, then it makes no sense to send it back to district court, revisit that question with a thumb on the scale because of the conflict. You don't need the thumb on the scale. You've already decided the conclusion is that standards determination was unreasonable. Well, I hear what ---- If that's your position, I understand the position, but it seems to me inconsistent with the bottom line that says remand. Well, that is our position. Our position is that the Ninth Circuit should have done that. And the reason why I think it did not is because of that first part of the opinion. I think the Ninth Circuit felt that it was not this Court's duty in the first instance to be applying the correct standard of review and that it should be the district court to be making that decision. Would it have mattered to provide to ---- it's not a different standard of review. We've gone through that. Right. To apply a standard of review and add in the factor of the conflict. But if the second half says claimant wins, then adding the conflict doesn't add anything, does it? Claimant is going to win that much more. No, I agree, Your Honor, and I think that should have been the outcome. But what it suggests is you're putting too much weight on the first disposition in telling us that the district court had to reach this result because the Ninth Circuit told us. I think you better, and we've taken most of your time on this, focus on what it was that was wrong with the district court's decision. Well, I'm happy to do that. I'm not sure how quickly I can do that. But ---- Well, you came in and told us that the Ninth Circuit's decision mandated this result. And I'm telling you, I'm not sure that's so. I understand. But even if I'm not correct and it didn't mandate this result, it's very clear that the Ninth Circuit in its prior memorandum disposition is, if not dictating the outcome of the case, putting a very heavy thumb on the scales. And in these abusive discretion cases ---- Do you really have to argue that? I mean, if the question is really whether ---- if this Court had a question as to whether or not, under proper analysis, how the case should come out, and asked the district court to make that analysis, can't you really argue that the district court didn't make the proper analysis here? Well, I'll do that, Your Honor. And I think, because I have limited time, what I'd like to do is just extract what I think is the biggest mistake that the district court made below, which was its employment of this reasonableness standard that I've talked about already. The district court admitted that it was left with this Court's determination the standard had acted unreasonably. And what the district court concluded in the decision below was, well, what do I do with that? And what the judge said was, even if I'm bound to consider standard's action unreasonable, because the Ninth Circuit has told me it is, standard's actions do not appear to be so unreasonable, and so was italicized in his opinion, that could be said that standard has abused its discretion. And this is a statement that really troubles me, because if the touchstone of abusive discretion review is reasonableness, then if a decision is unreasonable, then it should be an abusive discretion. That's what Conkright and Salama tells us. But what the district court appears to be doing is crafting a sliding scale of unreasonableness in which decisions can be unreasonable but still be upheld, and that unreasonable decisions should only be overturned if they're so unreasonable. And the district court has not cited any authority to support this proposition. I'm not aware of any. And I'm not aware of any. We've defined abusive discretion as not illogical or implausible or without support in the record. That's correct. What was illogical, implausible, or without support in the record in the decision made by standard? Thank you. The answer to that can be found in this Court's prior memorandum disposition, which is that standard did not look at the job that he was performing in determining what his own occupation was. Standard did not analyze in a reasoned and deliberative fashion what it was that he actually did. It relied on the Dictionary of Occupational Titles, which is a defunct jobs database. Even if it was appropriate for it to rely on the DOT, this Court found that it did so unreasonably. Well, there was a jobs analysis done for a plaintiff's particular job. It came from the company, I think. There was. In fact, there was one prepared by the – I believe it was prepared in connection with his workers' compensation case. So it was actually an objective evaluation of his job because it was performed by his employer and him in connection with the workers' compensation carrier. So what he actually did is in the record. That's correct. But there's no evidence in the record that standard actually evaluated what the physical duties of his job were before it denied his claim. And as the record shows, his job was, for a sedentary job, very strenuous. It required him to sit in one position for two hours at a time. It required him to sit for seven to seven and a half hours out of an eight-hour workday. The record shows that he essentially spent all day using a computer, which is inconsistent with his limitations, which were no prolonged sitting, no prolonged neck posturing, which is what he would have if he were looking at a computer. So these are the problems that are in the case. And the last thing I would say is even if it was appropriate for standard to use this DOT job, and even if it were appropriate for standard to extrapolate yet further and examine whether he could do the duties of a sedentary job, which we don't feel is appropriate and which this Court said in Saffle plaintiff administrators should not do, even if it's true, even if it's acceptable for it to evaluate whether Mr. Sahls could do a sedentary job, this Court's memorandum disposition strongly questions whether he could even do a sedentary job, even if it were appropriate to do that. What this Court said was that standard used the DOT's sedentary classification, which specifies that sedentary work involves sitting most of the time. Standard, however, also accepted that Sahls could not sit for a prolonged period of time in a fixed position. And that's an important thing to remember. You're over your time, and I don't know that you need to read our prior disposition to us with the time that you have left. All right. Thank you, Your Honor. Thank you. We'll hear from Appelese. Good morning. May it please the Court. My name is Warren Von Schleicher. I represent the defendant, Appelese Standard Insurance Company, and the Long-Term Disability ERISA Plan. I think what the district court did in this instance was precisely what it's under Montour and Glenn, which is to apply a multifactor approach in evaluating the conflict of interest and apply and evaluate standards determination and the various subparts and components that comprise that determination under an abuse of discretion standard. Now, counsel was addressing the court's prior disposition, and regarding the use of the DOT. And I think the district court is correct in this. The district court properly observed that on appeal, during the administrative appeal, Standard did consider the actual job duties that Mr. Soth's performed by considering the job analysis. And that's precisely what is required in considering and distilling one's own occupation. I think it was at the, I just heard, and it sounds like it rings a bell, there's something in the job's analysis with regard to sitting at the computer and using it for seven and a half hours a day. Is that right? Yes, that's correct. Is that consistent with the limitations Mr. Soth's experiences? I thought there was a, that exceeds the amount of time he's supposed to be sitting. Well, not necessarily, is the short answer. And the explanation is that the job analysis considers a nine-hour work day. And the own occupation and the coverage provided by the group policy considers an eight-hour work day. Now, in the job analysis, Mr. Soth's indicated that, and the employer agreed, that they required using a computer five and a quarter hours a day. But that's, again, in a nine-hour day. We have to consider an eight-hour day, so we'd have to temper that. The physician, who I think really was the proponent and advocate of a plaintiff's workers' compensation claim, Dr. Sobel, he opined that the plaintiff can work in a sitting position for six hours a day. And that is consistent with standards determination in this instance when looking at the own occupation as opposed to the specific job nine hours a day. So I do think that the job analysis and the own occupation evaluation and the policy's coverage for just an eight-hour day is consistent. So the physician says that he can sit six hours a day? That's correct. Is there something that says that his job requires him to sit seven and a half hours a day? Yes. That's what Mr. Soth's indicated in his job description, in the job analysis. But that, again, is a nine-hour day. Well, I'm not sure. There's a lunch break in there, but I'm not sure how that changes the maximum. If the maximum were seven and a half required for the job, and he was capable of sitting no more than six in an eight-hour day, I don't know how six gets to seven and a half by adding another hour to the workday. Well, because what it says is that by working seven to seven and a half hours in a nine-hour workday, he spends two to one and a half hours working, visiting other offices, which in the record he does, going to meetings. So it's not a continuous sedentary for seven to seven and a half hours a day in an eight-hour workday. Moreover, we're looking at own occupation and not the specific job that Mr. Soth's performed. So there is a distillation of what is required in this occupation nationally and not for this particular employer. What is his occupation? His occupation is for this employer is a business manager and a standard determined that it comports with the DOT for a, let me get the correct title, for a department manager. And on page 46 and 47 of defendant's appellate answering brief, I've laid out and compared the duties of the two, and they are quite similar. I would like to say, moreover, that the Dictionary of Occupational Titles is not defunct. It has been determined to be replaced. And I was just reading this on Sunday. A Senate subcommittee, and I can provide the court and counsel with the site. It's a Senate site. A Senate subcommittee determined in the fall of 2012 after conducting an investigation to replace the DOT will not be ready until 2016. Well, Standard evaluated this claim in 2004 and 2005. So O-Net would not have been ready, it still isn't ready, but would not have been ready for more than a decade. So I do think that reliance on the DOT under these circumstances was appropriate given the time period and given the fact that the government itself has said that the replacement for the DOT is not ready. And the Senate subcommittee on social security disability also determined that social security itself continues to use the DOT. To address the social security, since that is a natural lead into this, I also think that the district court in weighing the conflict, because that's what its duty was under Rule 52, and I think that the clearly erroneous standard does apply, to a credibility, what is essentially a credibility determination. The district court, I think. Although the district court is reviewing the same cold record that we're reviewing, so. That's correct. But the court is also making inferences and looking at documents. And one can discern from a dry record, one can make credibility determinations. And two people looking at the same record could reach different credibility determinations. And the issue is whether either of them, or one of them, or in this case the district courts, is clearly erroneous. So I don't think the fact that it's a dry record means that the clearly erroneous standard doesn't apply when making a credibility determination. With regard to the social security, what Glenn in particular focused on, and Montour as well, was what I've termed this dualism. That the administrator embraces social security by not just encouraging, but requiring, providing attorneys, providing counsel, assisting in advocating the receiving financial gain. And then after it's received the financial gain, turning its back on the social security decision and ignoring it without discussing it. And I think it's that dualism which was so key in Glenn that was a manifestation of a conflict of interest. That dualism did not exist here. And it's true. A standard insurance company did not discuss at length the social security finding. In 2004 and 2005, pre-Abedi, pre-Montour, pre-Glenn, pre-Saloma, administrators were not discussing social security decisions the way they do today. I would also note that. I don't know how that helps here. Oh, I'm addressing it only in terms of the court's determination that standards failure to discuss in detail the social security was not a manifestation of a conflict of interest. That there were other things behind it. That a conflict of interest did not animate its actions in that case. When was the social security determination? I don't know the precise date. I know that Standard learned about it when plaintiffs submitted his appeal, which was in September of 2005. I also noted that in our answering brief that Plaintiff's Counsel has submitted the administrative record, social security record in other cases, but didn't do so here. A true standard didn't ask for it. And I think at that time period it would not be unusual for an administrator not to ask for it. But if there were some evidence that needed to be considered, that Plaintiff thought favored his case, I would think that Plaintiff would have submitted it without appeal rather than just a letter saying congratulations, your claim is approved. In fact, in his footnote to his appellate reply brief, and excuse me, but my eyes are not the best, the plaintiff suggests that, while acknowledging that he's submitted the record in other cases, suggests that frequently social security files are duplicative and unnecessary. So again, I don't think that the, I think that the district court appropriately determined that standards addressing of social security was not a manifestation of a conflict of interest. I would point out, in addition, Plaintiff's Counsel has argued in the briefs that no independent medical examination was performed. But standard did receive and accept an independent medical examination. It was arranged through the workers' compensation carrier. It was agreed to by Mr. Saltz. He agreed to the position, and standard accepted those findings, which relate to avoiding keeping the neck in a fixed position for prolonged periods of time. But in this case, I think the district court appropriately found it was not an abuse of discretion for standard to determine that Mr. Saltz's own occupation did not require that kind of prolonged, fixed neck position. If there are no additional questions, I would just emphasize that the district court properly applied the factors in Montour, determined that the structural conflict of interest did not decisively influence standard's decision, and that standard's decision applying the group policy's terms was not an abuse of discretion. Thank you. Since I took most of your time with the detour, I'll still give you a minute for rebuttal. Thank you, Your Honor. I appreciate it, and I will be very brief. Counsel mentioned that the district court was making credibility determinations in this case, and that's certainly true. But credibility is a two-way street, and this court held in Abatey v. Alta Health, which is an en banc opinion, that what the courts are doing in arrested benefit cases is, quote, making something akin to a credibility determination about the insurance company's reason for denying coverage. Now, here it's already been determined that standard failed to consider the Social Security Award, failed to take into account his job duties and determine his occupation, and unreasonably relied on the DOT. So I would argue that given these failings, standard's decision is simply not credible under Abatey. It's not entitled to any significant deference, and therefore that its decision below should be reversed. And the last thing I would add is that Mr. Sahls went out on disability in 2004, and as a result this litigation is unfortunately almost a decade old. So I would urge the court to put an end to it one way or the other. Thank you, Your Honor. Thank you. Thank you, both counsel, for your arguments. The case just argued is submitted. And we will proceed to the final case on this morning's calendar, Angulo v. Colvin. Speaking of Social Security...
judges: Schroeder, Noonan, Clifton